# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

Aletyx Inc., )
                               )
     Plaintiff, )
                               )
      v. ) **CIVIL ACTION NO. 5:26-CV-345**
                               )
Victor Martins Bicudo LTDA and ) **COMPLAINT**
Victor Martins Bicudo, )
                               ) Jury Trial Demanded
     Defendants. )
                               )

Plaintiff Aletyx Inc. ("Aletyx"), brings this action seeking injunctive relief for breach of contract, misappropriation of trade secrets, and copyright infringement against defendants Victor Martins Bicudo LTDA ("Bicudo LTDA") d/b/a Veridtools and Mr. Victor Martins Bicudo ("Mr. Bicudo") (collectively, "Bicudo"), alleging as follows:

## NATURE OF THE ACTION

1. Aletyx is a leader in automation technologies that deliver scalable and customer-centric, AI-native enterprise solutions built on innovation and transparency.

2. This is an action for, *inter alia*, injunctive relief for breach of contract, misappropriation of trade secrets, and copyright infringement.

1

3. With this action, Aletyx seeks injunctive relief and compensation for Bicudo's willful acts of breach of contract, misappropriation of trade secrets, and copyright infringement and to prevent Bicudo's continued infringement of Aletyx's copyrighted works (the "Works") and misappropriation of Aletyx's trade secrets.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Aletyx is a Delaware corporation with its principal place of business in Cary, North Carolina.

5. Defendant Bicudo LTDA is a Brazilian limited liability company with its principal place of business in São Paulo, Brazil. Bicudo LTDA's Registration with Brazil's Federal Revenue Service, filed January 9, 2025, identifies its principal office as 1471 Avenida Paulista (Paulista Avenue), Conj 1110 (Suite 1110), Cxpst 9310 (P.O. Box 9310), Bela Vista, São Paulo, São Paulo, 01311-927, Brazil. Defendant Mr. Bicudo is the registered owner of defendant Bicudo LTDA and identifies his office as 223 Rua da Proclamação (Proclamation Street), Conceição (Conception), Diadema, São Paulo, 09990-620, Brazil.

6. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338 and 1836(b) because the claims arise under the copyright and trade secret laws of the United States. This Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

2

7. Bicudo is subject to general personal jurisdiction in this Court because the claims arise from a contractor agreement (the "Agreement", copy attached as Exhibit 1) between Mr. Bicudo and Aletyx, including pursuant to section 11.3 of the Agreement.

8. Venue is proper in this Court under 28 U.S.C. § 1400(b) because Mr. Bicudo performed his duties under the Agreement in this judicial district.

## FACTUAL BACKGROUND

### A. Aletyx Engaged Bicudo As A Contractor In November 2025

9. Aletyx is an automation technology company that develops enterprise solutions, including software for intelligent automation that uses specific techniques for compressing and structuring Decision Model and Notation ("DMN") files to enable semantic and visual comparisons. Aletyx was founded in 2025 by three entrepreneurs with over 50 years of combined software and automation experience. Aletyx leverages automation technologies to provide enterprise-ready open-source products and expert services that deliver artificial intelligence distributions that are optimized for real-world compute demands.

10. Before working for Aletyx as a contractor, starting in November 2025, Mr. Bicudo was a front-end engineer with a background in software engineering, including for example, designing and maintaining user interfaces and user experiences (*i.e.*, front ends or UI/UX). Before Aletyx, Mr. Bicudo had no

3

experience in the DMN space and no knowledge of DMN tooling semantics or comparison techniques.

11. Mr. Bicudo signed the Agreement to work for Aletyx as an independent service contractor on November 18, 2025. The Agreement included a statement of work ("SOW") that outlined Mr. Bicudo's monthly deliverables and quarterly milestones, including status reports, code submissions, documentation and implementation of automation features. Mr. Bicudo began work for Aletyx on or about November 25, 2025.

12. Mr. Bicudo acquired knowledge concerning DMN tooling, semantics and comparison techniques through confidential access to Aletyx's proprietary and confidential information during his engagement with Aletyx.

13. Aletyx engaged Mr. Bicudo "to provide software engineering services as an independent contractor pursuant to the terms and conditions set forth in [the] Agreement and any applicable Statement of Work ("SOW")." Ex. 1 , Section 1.1 (Engagement).

14. Mr. Bicudo's engagement with Aletyx required the performance of services ("Services"), including for example, front-end engineering and development services, software architecture design and implementation, code review and technical consultation, integration with business process automation

4

systems, decision automation platform development, and other technical services as mutually agreed in writing. Ex. 1, Section 1.2 (Services).

15. Mr. Bicudo's Services also included "deliverables, milestones, and technical requirements," which are described in the initial SOW and any subsequent SOWs. Ex. 1, Section 1.3 (Statement of Work); Ex. 1, Exhibit A: Statement of Work #1.

## B. Aletyx's Trade Secret And Proprietary Information

16. Aletyx owns the proprietary and confidential Work Product in the Agreement. Article 5 of the Agreement discusses intellectual property ("IP") rights, and section 5.1 provides ownership of the Work Product, stating (emphasis added):

> All work product, deliverables, inventions, discoveries, developments, concepts, ideas, improvements, trade secrets, proprietary information, software code, documentation, and other materials conceived, developed, or created by Contractor in connection with the Services (collectively, "Work Product") shall be ***considered "work made for hire" under U.S. copyright law*** to the maximum extent permitted by law.

Ex. 1, Section 5.1 (Work Product Ownership).

17. Mr. Bicudo assigned any IP rights in the Work Product to Aletyx. Section 5.2 of the Agreement states:

5

To the extent any Work Product is not deemed "work made for hire," Contractor hereby irrevocably assigns, transfers, and conveys to Company all right, title, and interest worldwide in and to such Work Product, including all intellectual property rights therein. This assignment includes, without limitation:

(a) All copyrights and applications and registrations therefor; (b) All patent rights and applications therefor; (c) All trade secret rights; (d) All moral rights and droits d'auteur; (e) All rights of attribution and integrity; (f) All other proprietary rights, whether now known or hereafter devised.

Ex. 1, Section 5.2 (Assignment of Rights).

18. Mr. Bicudo knew he had an obligation to maintain confidentiality of Aletyx's proprietary and confidential information. Section 6.2 states (emphasis added):

Contractor shall: (a) Hold all Confidential Information in strict confidence; (b) *Not disclose Confidential Information to any third party* without Company's prior written consent; (c) Use Confidential Information *solely to perform the Services*; (d) Protect Confidential Information with the same degree of care used for its own confidential information, but no less than reasonable care; (e) Limit access to

6

Confidential Information to those representatives with a legitimate need

to know.

Ex. 1, Section 6.2 (Confidentiality Obligations).

19. Mr. Bicudo knew the confidentiality requirements of the Agreement extended beyond the termination of the Agreement. Section 6.5 expressly states (emphasis added):

Confidentiality obligations shall survive termination of this Agreement

for a ***period of five (5) years***, except for ***trade secrets, which shall***

***remain confidential indefinitely***.

Ex. 1, Section 6.5 (Survival).

## C. Bicudo's Breach, Trade Secret Misappropriation And Copyright Infringement

20. Aletyx terminated the Agreement on April 6, 2026 with a 30-day notice period effective through May 6, 2026.

21. Fifteen (15) days later, on or about April 21, Mr. Bicudo published and released several projects on https://github.com ("Github") as an open source project named "Veridtools," under his own name, releasing DMN tooling as npm packages under an MIT license without Aletyx's knowledge or authorization.

22. On information and belief, the publishing tooling incorporated, reflected, or was substantially informed by confidential and trade secret Aletyx

7

concepts, implementation approaches, architectural methods, technical workflows, and proprietary know-how to which Bicudo had access during his work for Aletyx.

23. Bicudo further published written materials and descriptions accompanying the released tooling that, on information and belief, reflected or paraphrased internal Aletyx discussions and non-public implementation considerations relating to DMN processing, tooling, semantics, comparison techniques, simplification methodologies, deployment approaches and related architectural decisions.

24. The Veridtools packages (DMN fixtures, DMN semantic diff, and DMN diff highlighting in React) that Mr. Bicudo published map directly in concept and purpose to the work Mr. Bicudo was engaged to perform for Aletyx.

25. On information and belief, Bicudo copied and/or derived the source code for the Veridtools packages during the 30-day notice period of the Agreement (April 6 to May 6, 2026) and while Mr. Bicudo was still being compensated by Aletyx.

26. Bicudo published the Veridtools project during the 30-day notice period of the Agreement.

27. The Veridtools packages implement Aletyx's proprietary methodologies and approaches for DMN tooling. Aletyx's specific compression and structuring techniques enable improved semantic and visual comparisons.

8

28. Aletyx has never authorized for release, under any open source license or otherwise, its proprietary software code, architecture, concepts and implementations for DMN tooling.

29. Bicudo knowingly, intentionally and willfully published Aletyx's proprietary, confidential and trade secret information without Aletyx's knowledge or permission.

**D. Aletyx's DMCA Take-Down Notice And Attempt To Resolve The Dispute Before Filing Suit**

30.  On or about April 21, 2026 and pursuant to the Digital Millennium Copyright Act (DCMA), 17 U.S.C. § 512(c), Aletyx filed a DCMA takedown notice with Github to notify Github of the copyright infringement.

31. On or about April 22, 2026, Github took the copyrighted infringing repositories down from their website.

32. On or about April 23, 2026, Aletyx sent Mr. Bicudo written notice of his (a) breach of the Agreement, (b) trade secret misappropriation and (c) copyright infringement by confirmed email and by certified FedEx delivery at the email address and physical address specified in section 12.7 of the Agreement and demanded that Bicudo cease and desist the breach, trade secret misappropriation and copyright infringement.

9

33. On or about April 30, 2026, Bicudo sent a responsive correspondence indicating no intention of ceasing and desisting the copyright infringement.

## COUNT I—BREACH OF CONTRACT

34. Aletyx incorporates all preceding averments by reference.

35. The Agreement between Aletyx and Mr. Bicudo is a binding and enforceable contract.

36. Mr. Bicudo knowingly, intentionally and willfully breached section 5.1 (Work Product Ownership) of the Agreement by publishing Aletyx-owned proprietary and confidential information under a free MIT license.

37. Mr. Bicudo knowingly, intentionally and willfully breached section 5.2 (Assignment of Rights) of the Agreement by publishing Aletyx-owned proprietary and confidential information.

38. Mr. Bicudo knowingly, intentionally and willfully breached section 6.2 (Confidentiality Obligations) of the Agreement by publishing Aletyx's proprietary and confidential information.

39. Mr. Bicudo knowingly, intentionally and willfully breached section 6.4 (Return of Information) of the Agreement by retaining Aletyx's proprietary and confidential information under a free MIT license.

10

40. Mr. Bicudo knowingly, intentionally and willfully breached section 6.5 (Survival) of the Agreement by publishing Aletyx's proprietary and confidential information within five (5) years of the termination of the Agreement.

41. As a direct result of Mr. Bicudo's breach, Aletyx is suffering irreparable harm, which can only be prevented by issuance of a preliminary injunction because Aletyx's valuable proprietary and confidential information was published in a public forum under a free license. Mr. Bicudo has stated that his actions were not improper and thus indicates that he will continue to breach the Agreement.

### COUNT II—MISAPPROPRIATION OF TRADE SECRETS

42. Aletyx incorporates all preceding averments by reference.

43. Aletyx is the owner of information, including the confidential and trade secret information that constitutes its trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et. seq.*, the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 *et. seq.* and equivalent laws of other states.

44. On information and belief, Bicudo possess Aletyx trade secrets, including Aletyx's proprietary and confidential information.

45. Aletyx's trade secrets are used in products made for interstate commerce.

46. Aletyx's trade secrets are not generally known and are not readily ascertainable through proper means. Aletyx uses multiple administrative, technical,

11

and contractual safeguards to protect its trade secrets, confidential information and proprietary technologies. For example, Aletyx maintains its software repositories as private and non-public. Aletyx's source code, proprietary systems and trade-secret materials are not directly disclosed or made publicly accessible to customers. Instead, customers access Aletyx functionality through Aletyx-controlled SaaS (Software as a Service) infrastructure via compiled or deployed product implementations operating within customer environments.

47. Internally, Aletyx restricts employee, contractor and authorized personnel access to software repositories, systems, and proprietary materials based on role, project assignment and legitimate business need. Aletyx employs tiered and segmented access controls designed to ensure that employees, contractors, and other authorized personnel are granted access only to the specific repositories, systems and information necessary to perform their assigned responsibilities. Personnel assigned to work relating to DMN-related products or functionality may be granted access to the corresponding repositories containing proprietary materials, but such access is limited to authorized individuals with a business need for that access.

48. Aletyx further requires personnel with software repository or systems access, including employees and contractors, to maintain account-security protections, including multi-factor authentication where applicable. Access to Aletyx's backend infrastructure and development environments is also restricted and

12

controlled. Customers are not provided direct access to Aletyx source code or software repositories, proprietary backend systems, or underlying implementation details.

49. In addition, Aletyx utilizes contractual protections to preserve the confidentiality and ownership of its trade secrets and other intellectual property. Employees, contractors, consultants, and other personnel performing work relating to Aletyx intellectual property  are subject to written agreements addressing confidentiality obligations, ownership and assignment of work product, and protection of Aletyx proprietary information.

50. While engaged as a contractor for Aletyx, Bicudo had access to Aletyx's trade secrets for the limited purpose of performing his contractual duties and only for so long as he was engaged as a contractor. Aletyx kept its DMN code and tools confidential, and the DMV code and tools were subject to reasonable efforts by Aletyx to maintain their secrecy. The secrecy of the DMV code and tools provides independent actual and potential value to Aletyx.

51. Bicudo's unauthorized use, possession and exploitation of Aletyx confidential information and trade secrets constitutes misappropriation of Aletyx's trade secrets in violation of the Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act.

52. On information and belief, Bicudo's misappropriation of Aletyx trade secrets is ongoing.

53. Bicudo's misappropriation of Aletyx trade secrets was and continues to be intentional, willful and malicious.

54. Pursuant to 18 U.S.C. § 1836(a)(3)(A) and N.C. Gen. Stat. § 66-154(a), Bicudo should be preliminarily enjoined from any further actual or threatened misappropriation of Aletyx's trade secrets and confidential information, and enjoined from any benefit from that information, to eliminate any inequitable or unjust advantage arising from Bicudo's misappropriation, including, but not limited to, injunctive relief preventing Bicudo from retaining access to or copies of the data and files containing trade secrets.

### COUNT III -- INFRINGEMENT OF COPYRIGHTED WORKS

55. Aletyx incorporates all preceding averments by reference.

56. Aletyx is the owner of the Works, including but not limited the Work Product, Aletyx trade secrets, Aletyx proprietary and confidential information, Aletyx software and related original work of authorship under the Copyright Act, 17 U.S.C. § 101 *et seq.*

57. The Works were created by Aletyx, its employees, and its contractors, and the Works contain original, human-created expressions.

14

58.  The Works have significant value and have been created at considerable expense.

59.  The Works are not registered with the U.S. Copyright Office but are protected under copyright law from the moment of creation, because the Works contains sufficient human authorship.

60.  On information and belief, Bicudo wrongfully created copies and derivatives of Aletyx's Works without Aletyx's consent and engaged in copyright infringement that has been, and continues to be, knowing, intentional and willful.

61.  On information and belief, Bicudo used artificial intelligence to recreate Aletyx's Works, including but not limited to the Veridtools' packages that are substantially similar to Aletyx's Works.

62.  On information and belief, the artificial intelligence Bicudo used was trained or prompted using Mr. Bicudo's knowledge of the Works, resulting in output that is substantially similar to the original work.

63.  On or about April 21, 2026 and on information and belief, Bicudo uploaded recreated software that is substantially similar to the Works to a repository on Github's website without Aletyx's authorization.

64.  On or about April 21, 2026 and pursuant to the Digital Millennium Copyright Act (DCMA), 17 U.S.C. § 512(c), Aletyx filed a DCMA takedown notice with Github to notify Github of the copyright infringement.

65. On or about April 22, 2026, Github took the copyright infringing repositories down from their website.

66. On or about April 23, 2026, Aletyx sent Mr. Bicudo correspondence demanding Bicudo cease and desist the copyright infringement.

67. On or about April 30, 2026, Bicudo sent a responsive correspondence indicating no intention of ceasing and desisting the copyright infringement, in part, because Aletyx had not yet provided a copyright registration number.

68. Bicudo reproduced and distributed the recreated software without Aletyx's authorization, thereby infringing Aletyx's exclusive rights under 17 U.S.C. § 106.

69. On information and belief, Bicudo's infringement has been, and continues to be, knowing, intentional and willful.

70. Bicudo's acts of infringement of the Works have caused and will continue to cause Aletyx damages for which Aletyx is entitled to compensation pursuant to 17 U.S.C. § 504.

71. Bicudo's acts of infringement of the copyrighted Works have caused and will continue to cause Aletyx immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 17 U.S.C. § 502. Aletyx has no adequate remedy at law.

16

## JURY DEMAND

Aletyx demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Aletyx prays that this Court:

1.  Enter judgment in favor of Aletyx;

2.  Grant a preliminary injunction providing as follows:

a.  That Bicudo be restrained and enjoined from directly or indirectly, whether alone or in concert with others, having, keeping, duplicating, recreating, maintaining, accessing, viewing, using, copying, modifying or otherwise retaining access to Aletyx's trade secrets;

b.  That Bicudo be required to confirm by affidavit that it has complied with the foregoing, that its access to and control over Aletyx's trade secrets have been terminated, and that any copies of Aletyx's trade secrets have been permanently deleted; and

c.  That Bicudo be required to allow a forensic analyst designated by Aletyx to access his computer(s), phone(s), storage device(s), online accounts and repositories, and any other electronic devices or media in his possession, custody, or control, to confirm that all copies of Aletyx's trade secrets have been permanently deleted.

17

3. That the above-requested preliminary injunction be issued for the period of time until this action is resolved through trial or arbitration;

4. Preliminarily and permanently enjoin Bicudo from infringing the Works and from reproducing, preparing derivative works, distributing, performing, displaying or transmitting the Works under 17 U.S.C. § 502;

5. Award damages sufficient to compensate for Bicudo's breach of contract, trade secret misappropriation and copyright infringement together with interest and costs, along with enhanced damages, under 17 U.S.C. § 504;

6. Award reasonable attorney fees and costs based on Sections 8.1 (a), (e) and (f) (Contractor Indemnification) and 11.4 (Costs) of the Agreement, which states "[t]he prevailing Party in any dispute shall be entitled to recover its reasonable attorneys' fees and costs;"

7. Find Bicudo willfully and maliciously misappropriated Aletyx's trade secrets and award reasonable attorney's fees under 18 U.S.C. § 1836(b)(3)(D) and N.C. Gen. Stat. §§ 66-154(d);

8. Find this to be an exceptional case and award reasonable attorney fees under 17 U.S.C. § 505;

9. Award expenses and costs as allowed by law; and

10. Grant other such relief to which Aletyx may be entitled and that the Court deems just and proper.

18

Dated: May 21, 2026

SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN,
L.L.P.

By:   */s/   Kelsey I. Nix*
Kelsey I. Nix (N.C. Bar No. 61391)
Jonathan V. Lewis (N.C. Bar No. 54482)
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:  (919) 821-1220
Facsimile:  (919) 821-6800
knix@smithlaw.com
jlewis@smithlaw.com

19